

United States District Court
Southern District of Texas
ENTERED

APR 0 1 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Adela Cano, individually and on behalf of her minor son Abraham Cano, | § § § § | |
| Plaintiffs, | § § § § | |
| v. | § § § § | C.A. No. B-01-156 |
| San Benito Consol. Indep. Sch. Dist., et al., | § § § | |
| Defendants. | § | |

## ORDER

BE IT REMEMBERED that on March 30, 2004, the Court considered Defendants' Motions to Dismiss and Defendant Villarreal's alternative Motion for Summary Judgment [Dkt. Nos. 45-1, 45-2, 46, & 47][1] and the responses and replies thereto. The Court **GRANTS** the Defendants' Motions.

### I. Introduction

Plaintiffs bring this claim under 42 U.S.C. § 1983, alleging substantive due process violations under the Fourteenth Amendment of the United States Constitution and common law negligence under Texas law. Plaintiffs allege violations of Abraham Cano's constitutional due process rights to "life, liberty, health, safety, and bodily integrity and to a safe environment in a mandatory school setting." Pls' Response to

---

[1] All Defendants have filed motions to dismiss. Only Defendant Villarreal has requested alternative relief in the form of summary judgment. Both Villarreal and Guerrero, however, attach evidence to their motions, and Plaintiffs respond with attached evidence. As a result, the Court considers Defendants Villarreal and Guerrero's motions as motions for summary judgment. San Benito Consolidated Independent School District has not attached evidence to its motion to dismiss. The Court nonetheless disposes with these motions collectively as summary judgments.

Defendants' Motion to Dismiss, at p. 8 [Dkt. No. 50]. Plaintiffs assert these claims against three Defendants: San Benito Consolidated Independent School District ("SBCISD"), Heriberto Villarreal, the principal of Berta Cabaza Middle School where Abraham attended school at the time of the incident subject to this lawsuit, and Coach Guerrero, Abraham's physical education ("PE") instructor at the middle school. See Pls' Second Amended Original Cmplt. [Dkt. No. 36]. Although all defendants devote a portion of their motions to dismiss and alternatively for summary judgment to perceived allegations that Defendants imposed excessive punishment on Abraham, Plaintiffs' response clarifies that to the extent excessive punishment was mentioned in their second amended complaint, they are abandoning this claim as Defendants Villarreal and Guerrero have not argued or raised issues of fact indicating their actions amounted to discipline. See, e.g., Pls.' Response to Def. SBCISD's Motion to Dismiss, at p. 12.

## II. Factual Background

Abraham Cano, the minor in this suit, has a congenital bone disease called Osteogenesis Imperfecta, which causes his bones to become brittle. Plaintiffs' claims arise out of an injury Abraham sustained while participating in a soccer game in PE class in November, 2000. Abraham was one day shy of his 14th birthday when the accident occurred.

Defendant Guerrero was Abraham's PE instructor and a coach. Plaintiffs present evidence that because Guerrero was aware of Abraham's condition, Guerrero went to the school nurse to ascertain whether or to what extent Abraham could participate in PE. See id. at Ex. C, p. 45, 1.1- p. 47, 1.9. In deposition testimony, Guerrero stated that he relied on the school nurse to issue notes to excuse students from PE or to obtain letters from doctors. Guerrero never got such an excuse letter concerning Abraham. As a result, Guerrero allowed Abraham to participate in PE activities to the extent he was able and based upon Abraham's own assessment of whether he could participate. See id. at Ex. C, pp. 109-14. Coach Gerrero generally understood this approach to be appropriate because he had not received further instruction from anyone in the school district. See id.

Abraham's condition was documented in his school health records. See Pls' Response, p. 3 & Exs. 2, 3, 10, 15 [Dkt. No. 49]. No specific modifications concerning Abraham's physical activity was ever developed, but Abraham was classified as a student who could participate in "regular physical education with modifications." See id., at Ex. A (Villarreal's Dep. Testimony Vol. I, pp. 98-99). There is no record that the school ever created an Independent Education Plan ("IEP") for Abraham. See id. at Ex. A, (Villarreal's Dep. Testimony Vol. I, p. 49).

Although Abraham's name was on a list indicating he required some special attention, the district and Principal Villarreal relied on Abraham's mother to provide any necessary medical information, rather than contacting Abraham's doctor directly. See id., at Ex. B (Villarreal's Dep. Testimony Vol. II, pp. 116-117). Plaintiffs present evidence that regardless of whether the school district possessed all of the necessary medical records from Abraham's doctors, they were aware of his condition and the fact that Abraham had a history of breaking bones in fifth and sixth grade before beginning at the middle school. See id., at Ex. A (Villarreal's Dep. Testimony Vol. I, pp. 72, 94-99). Villarreal testified in his deposition that Abraham's mother provided the school district with authorization to obtain certain medical records, and in 1997, the school attempted to get such records from the doctor and again from the mother. See id. at Ex. A, pp. 95-96. However, it appears based on Villarreal's deposition testimony that the school district never received medical records from Dr. Vargas, Abraham's treating physician. See id. at Ex. A, p. 49.

Abraham testified that at the beginning of each PE class, he made the decision to either dress for gym class, which signified his intention to participate, or remain in street clothing. See id. at Ex. F (Deposition Testimony of Abraham Cano, at p. 72-73). Abraham further testified that if he didn't dress for PE class, coach Guerrero would make him run laps, which Abraham did not like because it bothered his asthma. See id. at pp. 75-76. Abraham also testified that his dislike for running laps had nothing to do with his Osteogenesis Imperfecta condition. See id. at pp. 75-76. Abraham stated that Coach Guerrero sometimes honored his (Abraham's) decision to not participate. See id. at 76-77. From Abaham's testimony, it seems that Coach Guerrero did not

3

always handle Abraham's requests consistently; sometimes the coach would tell him to do laps if he didn't play; other times the coach did not respond at all and honored Abraham's decision; and sometimes the coach would threaten a detention if he didn't play. When Abraham did play sports like football, he placed himself in positions in which he was not required to actively participate or that did not involve much activity. Abraham noted that Coach Guerrero told Abraham he (the Coach) would be careful with Abraham concerning his condition. See id. at p. 86.

On the day of the accident, Abraham decided he would not dress for gym class and thus he decided he would not participate in the PE class. See id. at p. 106. While in street clothing, Abraham made his way to the field to observe the class. During the class he followed the soccer game, moving up and down the field with the class as they played. In the course of the game, the ball "flew past [Abraham]." Id. at p. 109. Abraham was the closest to the ball, and so he turned to retrieve the ball. See id. He remembers nothing after that. Despite the fact that Abraham was wearing street clothing, he testified that he played in the game because after the class warmed up, Coach Guerrero told him that he would play. See id. at 111. It is undisputed that Abraham sustained a severe injury to his left ankle and right knee as a result of his fall on the playing field that day.

### III. Standard for Summary Judgment

Summary Judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). See also Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by 'showing' . . . that there

is an absence of evidence to support the non-moving party's case"). See also Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," Celotex Corp., 477 U.S. at 327, the party "need not negate the elements of the nonmovant's case." Little, 37 F.3d at 1075 (citing Celotex, 477 U.S. at 323).

If the moving party meets this burden, the non-movant then must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Little, 37 F.3d at 1071 (citing Celotex, 477 U.S. at 325). "Unsubstantiated assertions" or "mere allegations or denials" will not adequately cast doubt on material facts at issue. See Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994). See also Fed. R. Civ. P. 56(e). Likewise, the nonmovant must present more than a mere "scintilla" of evidence. See Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir. 1994). The evidence must be viewed in the light most favorable to the nonmovant. See Whelan v. Winchester Prod. Co., 319 F.3d 225, 228 (5th Cir. 2003); Walker v. Thompson, 214 F.3d 615, 624 (5th Cir. 2000). Summary Judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." Little, 37 F.3d at 1071.

**IV. Legal Framework and Analysis of Due Process Claim Under § 1983**

"To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution of laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000). The Fifth Circuit has stated,

> qualified immunity shields a state official from personal liability for damages under 42 U.S.C. § 1983 when the official's exercise of discretionary authority results in a violation of an individual's federal constitutional or statutory rights, 'unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit was founded.'

Palmer v. Johnson, 193 F.3d 346, 351 (5th Cir. 1999) (citations omitted). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." See Austin v. Johnson, 328 F.3d 204, 207 (5th Cir. 2003) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526,105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). The defense of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" Austin, 193 F.3d at 207 (quoting Wooley v. City of Baton Rouge, 211 F.3d 913, 918-19 (5th Cir. 2000)). The initial question is whether "taken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201, 121 S.CT. 2151, 150 L.Ed.2d 272 (2001). The test for qualified immunity necessitates a two-part or "bifurcated" test of (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and if so (2) whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. See Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 755 (5th Cir. 2001).

## V. Due Process Claims

Plaintiffs state, "[l]ike a loaded handgun, or even just a sharp knife, 13 year-old Abraham was left to determine for himself whether he might get hurt playing soccer." Pls' Response to Def. SBCISD's Motion to Dismiss, at p. 5. Plaintiffs' Fourteenth Amendment violations are based on what Plaintiffs state as Abraham's "right to be protected from the dangers particular to him involving his participation in physical confrontations or contact sports." Pls' Response to SBCISD's Motion to Dismiss, at p. 13. In this respect, Plaintiffs are not claiming a "right not to participate in physical education." Id.

Because Plaintiffs allege injuries caused by state actors and their failure to prevent Abraham from injuring himself given his volatile bone condition, Fifth Circuit precedent of Doe v. Taylor, 15 F.3d 443 (5th Cir.) (en banc), cert. denied, 513 U.S. 815 (1994) and Jefferson v. Ysleta Indep. Sch. Dist., 817 F.2d 303 (5th Cir. 1987) is applicable. Plaintiffs' alleged substantive due process violations, however, are not

factually similar to these seminal cases in the area of student bodily integrity.[2]

In <u>Jefferson v. Ysleta Indep. Sch. Dist.</u>, the parent of a second-grade student brought a section 1983 claim against the teacher and principal for substantive due process violations when the student was tied to a chair for the better part of two days and denied access to the bathroom as part of an "instructional technique imposed by school policy." <u>Jefferson</u>, 817 F.2d at 304. The Fifth Circuit held in the context of reviewing the district court's rejection of qualified immunity that "a competent teacher [would know] or should have known that to tie a second-grade student to a chair . . . with no suggested justification, such as punishment or discipline, was constitutionally impermissible." <u>Id.</u> at 305. The Court reiterated that "'[t]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process.'" <u>Id.</u> (citing <u>Schillingford v. Holmes</u>, 634 F.2d 263, 265 (5th Cir. 1981) (citing <u>Hall v. Tawney</u>, 621 F.2d 607, 613 (4th Cir. 1980)). Later, in <u>Doe v. Taylor</u>, the Court applied the holding of <u>Jefferson</u> to a school teacher who sexually fondled and statutorily raped a 15 year-old school girl, holding that the student had a due process right to bodily integrity in that egregious situation. 15 F.3d at 451.

The Due Process Clause is not implicated by *negligent* acts of an official that causes an unintended injury to life, liberty, or property. <u>See Daniels v. Williams</u>, 474 U.S. 327 (1986). Section 1983 imposes liability only for violations protected by the Constitution and it does not establish liability for injuries that arise out of duties of care sounding in tort law. <u>Baker v. McCollan</u>, 443 U.S. 137, 146 (1979). Plaintiffs have not alleged any facts, or presented any evidence in their responses, that indicate the actions of any Defendants were deliberately indifferent, rather than imprudent. Both

---

[2]Plaintiffs cite a district court case, <u>Roventini v. Pasadena Indep. Sch. Dist.</u>, 981 F. supp. 1013 (S.D. Tex. 1997). Plaintiffs indicate this case was "vacated on other grounds." This case was vacated in its entirety because the court later determined the decision lacked a factual basis after the court learned certain material allegations in the complaint were false. <u>See Roventini v. Pasadena Indep. Sch. Dist.</u>, 183 F.R.D. 500 (S.D. Tex. 1998). In light of new facts, the Court's first opinion in <u>Roventini</u> served as nothing more than an impermissible advisory opinion, which is not good law to be cited and relied upon. Even if this were not the case, the facts as they were falsely presented to the Court in the first <u>Roventini</u> decision were far more egregious than the facts in this case because they involved a student who was denied water, rest, and medical attention during a strenuous football practice.

Coach Guerrero and Principal Villarreal did some form of follow-up in the face of information concerning Abraham's condition. Their actions, whether prudent or not, were not marked by deliberate indifference. In fact, according to Plaintiffs' submitted evidence Coach Guerrero went to the nurse to investigate Abraham's condition and whether he should be allowed to continue in PE class. Principal Villarreal also testified that Abraham's name was on a list indicating he required some special attention, including certain modifications in physical activities, but Villarreal relied on Abraham's mother to provide any necessary medical information, and allowed Abraham to participate in PE class at his own discretion. Should the school district and Principal Villarreal have been more active in securing Abraham's medical records, or ensuring that Abraham's mother did, and determine whether excusing him permanently from PE was appropriate according to a doctor's recommendation? Perhaps. Certainly, failure to do so placed Defendants in a position necessitating their defense in a lawsuit. Having said this, Plaintiffs have alleged no facts that indicate Defendants were deliberately indifferent to Abraham's welfare or bodily integrity. Unlike Plaintiffs' characterization of these facts, the Court disagrees that Defendants' actions were tantamount to providing Abraham with a knife or loaded handgun.

The Court determines that Plaintiffs failed to raise a genuine issue of material fact as to the existence of a claim under the Due Process Clause of the Fourteenth Amendment and Section 1983. Without a constitutional violation, Defendants Villarreal and Guerrero are entitled to qualified immunity. Likewise, Plaintiff has failed to present a viable due process claim against Defendant SBCISD.

## VI. State Law Claim of Negligence

Plaintiffs allege that Defendants Guerrero and Villarreal were negligent under state tort law. Although there has been substantial development in this case, the case is not on the eve of trial, the Court has not yet entered a scheduling order, and the Court is only now deciding motions to dismiss that have been converted into summary judgment motions. Given Fifth Circuit law, it would likely be an abuse of discretion to exercise supplemental jurisdiction over the state law negligence claims. See Parker &

Parsley Petroleum Co. v. BJ-Titan Services-Company, 972 F.2d 580, 586-87 (5th Cir. 1992) (discussing the Carnegie-Mellon and Gibbs factors in determining whether to exercise supplemental jurisdiction as including an analysis of the stage of litigation, judicial economy, convenience, fairness, and federal comity). After weighing the appropriate factors mentioned above, the Court concludes the state claims should be resolved in state court. Furthermore, any discovery conducted to this point can be readily applied to litigating the negligence claims in the state court, which should lead to a fairly prompt resolution of this claim. The remaining state law claims are dismissed without prejudice to refiling in state court.

### VII. Conclusion

The Court **GRANTS** the Defendants' Motions to Dismiss and Defendant Villarreal's Alternative Motion for Summary Judgment on the federal due process claim [Dkt. Nos. 45-1, 45-2, 46, & 47]. The Court **DISMISSES without prejudice** the remaining state law claims. The Court **DENIES as moot** [Dkt. No. 54] Plaintiffs' Request for Trial Setting.

DONE this 31st day of March, 2004, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge